**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| In re: | Chapter 15 |
| VIAÇÃO ÁREA SÃO PAULO S.A., | Case No.: _____ |
| Debtor in a Foreign Proceeding | |

**FOREIGN REPRESENTATIVE'S PETITION FOR**
**RECOGNITION OF DEBTOR'S BRAZILIAN PROCEEDING**
**AND MOTION FOR ORDER GRANTING RELATED RELIEF**
**PURSUANT TO 11 U.S.C. §§ 105(a), 1509(b), 1517, 1520, 1521 AND 1525**

Alexandre Tajra (the "Petitioner" or "Foreign Representative"), in his capacity as the court-appointed Judicial Administrator and duly-authorized foreign representative of the Brazilian proceeding (the "Brazilian Proceeding") of the above-captioned debtor, Viação Área São Paulo S.A. (the "Debtor" or "VASP") pending before Judge Daniel Carnio Costa of the First Bankruptcy and Court-Supervised Reorganization Court of the Central Civil Court of the Judicial District of São Paulo (the "Brazilian Bankruptcy Court") pursuant to Federal Law No. 11.101 of February 9, 2005 ("Brazilian Bankruptcy Law") under the laws of the Federative Republic of Brazil ("Brazil"), respectfully submits this petition (together with the form chapter 15 petition filed contemporaneously herewith, the "Chapter 15 Petition") and hereby moves the Court for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), recognizing the Brazilian Proceeding as a "foreign main proceeding" pursuant to section 1517 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code") and granting certain related relief pursuant to sections 105(a), 1509(b), 1520, 1521 and 1525 of the Bankruptcy Code.  In support of the Chapter 15 Petition, Petitioner has filed contemporaneously herewith and incorporates herein by reference the Declaration of Alexandre

1

Tajra as Foreign Representative of the Brazilian Proceeding in support of this Chapter 15 Petition (the "Foreign Representative Declaration" or "Frgn. Rep. Decl."), and respectfully states as follows:

## JURISDICTION AND VENUE

1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, as well as Rule 87.2 of the Local Rules of the United States District Court for the Southern District of Florida ("Local District Rule 87.2"), which incorporates the General Order of Reference entered July 11, 1984 referring all cases arising under Title 11 of the United States Code and proceedings arising in or related to cases under Title 11, United States Code, to the Bankruptcy Judges for this judicial district ("Standing Order of Reference").  This is a core proceeding under 28 U.S.C. § 157(b)(2)(p).  For reasons discussed below, venue of this proceeding is proper in this judicial district pursuant to 28 U.S.C. § 1410(1) and (3).

## FACTUAL BACKGROUND

**A.    Corporate History Of Debtor**

2.    VASP began operating as a commercial airline in 1933 with its headquarters in São Paulo, Brazil.  (Frgn. Rep. Decl. ¶ 4)  Shortly after its founding, in 1935, financial distress prompted government intervention, and ownership of 91.6% of VASP's common shares was transferred to the Government of the State of São Paulo.  (Frgn. Rep. Decl. ¶ 4)

3.    VASP remained a government-owned enterprise until 1990, when its ownership was purchased from the State of São Paulo by Brazilian businessman Wagner Canhedo Azevedo ("Mr. Canhedo").  (Frgn. Rep. Decl. ¶ 5)

**B.    Events Precipitating Commencement Of Brazilian Proceeding**

4.    Following its acquisition by Mr. Canhedo, VASP began a period of expansion in an effort to transition from a regional to an international carrier.  (Frgn. Rep. Decl. ¶ 6)   At its peak, VASP offered commercial flights from Brazil to many international destinations including Miami; New York; Seoul, Korea and Brussels, Belgium.  (Frgn. Rep. Decl. ¶ 6)

5.    By the turn of the century, however, VASP's fortunes had taken a turn for the worse.  (Frgn. Rep. Decl. ¶ 7)   Among other reasons, the decline was precipitated by the devaluation of the Brazilian Real in 1999.  (Frgn. Rep. Decl. ¶ 7)   Left with only its owned aircraft – by that time, an aged fleet of Boeing 727s/737s and Airbus A300s – VASP cancelled all of its international operations by 2002 and collapsed back into a regional carrier within South America.  (Frgn. Rep. Decl. ¶ 7)

6.    In the first half of 2005, VASP publicly disclosed its poor financial condition, reporting cumulative losses of R$520 million during 2004.  (Frgn. Rep. Decl. ¶ 8)  According to VASP's accounting records, the company had aggregate liabilities of R$3.287 billion as of December 2004.  (Frgn. Rep. Decl. ¶ 8)

7.    On March 10, 2004, due to unpaid labor obligations, a lawsuit was filed before the labor courts by the Public Attorney's Office for the State of São Paulo and by two labor unions, *Sindicato Nacional dos Aeroviários* and *Sindicato Nacional dos Aeronautas*.  (Frgn. Rep. Decl. ¶ 9)  The Fourteenth Labor Court of São Paulo ordered an intervention on VASP, and Mr. Canhedo lost control over the administration of the company.   (Frgn. Rep. Decl. ¶ 9)

8.    On July 1, 2005, the interveners appointed by the Labor Court, with the consent of the Public Attorney's Office, caused VASP to file a petition for a judicial reorganization under the then newly-enacted Brazilian Bankruptcy Law.  (Frgn. Rep. Decl. ¶ 10)  After the petition

had been granted, a report issued in December 2005 in support of VASP's then-proposed plan of reorganization listed VASP's total assets as of June 2005 at R$2,963,097 billion inclusive of (i) R$97 million in current assets, (ii) R$1,410 million in planes,[1] (iii) R$826 million in tax credits, and (iv) R$727 million in accounts receivable.  (Frgn. Rep. Decl. ¶ 10)

## C.    Commencement of Brazilian Proceeding and Failure Of Reorganization Plan

9.    By order dated October 7, 2005 (the "Commencement Order"),[2] the Brazilian Bankruptcy Court granted VASP's petition commencing the Brazilian Proceeding as a "judicial reorganization" under Brazilian Bankruptcy Law and appointing the Petitioner as Judicial Administrator thereof.  (Frgn. Rep. Decl. ¶ 11)

10.    The goal of a "judicial reorganization" in Brazil is to reach a judicially-supervised plan of reorganization between the debtor and its creditors.  (Frgn. Rep. Decl. ¶ 12)  Brazilian Bankruptcy Law requires that such plan contain:  (i) a thorough description of the measures to be taken to successfully reorganize the company; (ii) a demonstration of the economic feasibility of the plan of reorganization; and (iii) a financial expert's assessment of debtor's goods and assets. (Frgn. Rep. Decl. ¶ 12)  In addition, the plan of reorganization must provide for the payment of the affected claims.  (Frgn. Rep. Decl. ¶ 12)  After a plan is proposed by a debtor, its creditors meet to deliberate and vote on the plan.  (Frgn. Rep. Decl. ¶ 12)  A plan supported by the requisite majorities of various creditor classes must then be approved by the Brazilian bankruptcy court.  (Frgn. Rep. Decl. ¶ 12)  Once a plan is confirmed, the debtor continues under

---

[1]    As of June 30, 2005, VASP had 31 airplanes, consisting of nineteen Boeing 737-200s; four Boeing 737-300s; three Airbus A300s; two Boeing 737-200 Cargo aircraft; and three Boeing 727-200 Cargo aircraft.  Thirty of these airplanes were owned by VASP itself, while one was subject to a lease contract.

[2]    A copy of the original Commencement Order (in Portuguese) as well as a certified English translation thereof are attached to the Foreign Representative Declaration as Exhibits A and B, respectively.

the supervision of the court for two years before it can emerge from judicial reorganization to ensure its initial performance under the plan.  (Frgn. Rep. Decl. ¶ 12)  If at any time during that two year period the debtor breaches any obligations assumed under the plan, the debtor must be declared bankrupt by the court and placed into liquidation.   (Frgn. Rep. Decl. ¶ 12) Alternatively, if the debtor successfully emerges from judicial reorganization but thereafter fails to perform any obligation under the plan, any creditor may petition the court for specific performance or to have the debtor declared bankrupt and placed into liquidation.  (Frgn. Rep. Decl. ¶ 12)

11.    In accordance with Brazilian Bankruptcy Law, after the Brazilian Proceeding had been commenced, VASP presented a plan of reorganization (the "Brazilian Plan") which it believed, with the support of its creditors, would allow it to continue operating the airline while reducing its debt to a manageable level.  (Frgn. Rep. Decl. ¶ 13)  To that end, the Brazilian Plan offered VASP's creditors one of two options:  (i) exchange their outstanding debts for a share of ownership in specials funds into which VASP would transfer certain assets as well as R$826 million of tax credits that were on the company's balance sheet, or (ii) agree to discount the face amount and extend the maturity of their claims, which would become the obligations of a "low cost" airline to be created by VASP, which was called the "Operational VASP."  (Frgn. Rep. Decl. ¶ 13)  Operational VASP would operate initially with only six (6) planes, thus reducing the size of VASP, and would also provide airline maintenance and cargo services.  (Frgn. Rep. Decl. ¶ 13)

12.    In August 24, 2006, having obtained the requisite creditor support, the Brazilian Plan was approved by the Brazilian Bankruptcy Court.  (Frgn. Rep. Decl. ¶ 14)  In the ensuing two year period, however, VASP failed to comply with certain of its obligations under the plan.

(Frgn. Rep. Decl. ¶ 14)  As a result of these developments, a meeting of creditors was called and held on July 17, 2008, the majority of VASP's creditors voted to petition the Court to convert the judicial reorganization into a full bankruptcy proceeding.  (Frgn. Rep. Decl. ¶ 14)

13.     On September 4, 2008, the Brazilian Bankruptcy Court entered an order declaring VASP bankrupt and converting the judicial reorganization into a liquidation.  (Frgn. Rep. Decl. ¶ 15)  At this point, continuing operations of VASP's business – which were limited, if any – permanently ceased.  (Frgn. Rep. Decl. ¶ 15)

**D.     Current Status Of Brazilian Proceeding**

14.     Upon the Brazilian Proceeding being converted to a liquidation, the Petitioner, in his capacity as Judicial Administrator, became obligated under the Brazilian Bankruptcy Law to collect and liquidate the Debtor's assets under the supervision of the Brazilian Bankruptcy Court in order to make distributions to creditors on account of their allowed claims.  (Frgn. Rep. Decl. ¶ 16)  As of August 27, 2010, the outstanding amount of allowed claims against the Debtor's estate was R$5,069,936,783.21 (US$2,250,037,944) – making the Brazilian Proceeding one of the largest bankruptcy matters in modern Brazilian financial history.  (Frgn. Rep. Decl. ¶ 16)  By contrast, the readily identifiable assets remaining in the Debtor's possession following conversion of the Brazilian Proceeding were relatively minimal.  (Frgn. Rep. Decl. ¶ 16)  For example, the Petitioner has identified and is working to liquidate approximately R$100 million of commercial buildings in Brazil belonging to the estate.  (Frgn. Rep. Decl. ¶ 16)  Furthermore, the Debtor had less than R$50 million in cash on hand upon conversion, and since conversion a substantial portion of such cash has been used to pay (or is being reserved to pay in the future) the claims of post-petition creditors and administrative expenses of the Debtor's estate.  (Frgn. Rep. Decl. ¶ 16)

6

15.     As a result, the prospect of any substantial recovery becoming available to the Debtor's creditors is largely dependent upon the Petitioner finding and retrieving valuable assets that had been transferred away from the Debtor prior to the commencement of the Brazilian Proceeding or its conversion from a judicial reorganization to a liquidation.  (Frgn. Rep. Decl. ¶ 17)  To this end, for the benefit of the bankruptcy creditors, the Public Attorney's Office for the State of São Paulo has successfully petitioned the Brazilian Bankruptcy Court to freeze the assets of certain third parties pending a determination of whether they belong to or otherwise can be recovered by the Debtor's estate.  (Frgn. Rep. Decl. ¶ 17)  Following such determination by the Brazilian Bankruptcy Court, and subject to the Brazilian Proceeding being granted chapter 15 recognition, the Foreign Representative anticipates requesting this Court to enforce in the United States any relief that has been or may be granted in Brazil authorizing him to recover assets from third parties for the benefit of VASP's estate.  (Frgn. Rep. Decl. ¶ 17)

16.     In furtherance of these efforts and investigations, the Petitioner requested authority from the Brazilian Bankruptcy Court to commence a chapter 15 case seeking recognition of the Brazilian Proceeding and the assistance of courts in the United States in fulfilling his duties to collect and liquidate the Debtor's assets.  (Frgn. Rep. Decl. ¶ 18)  By order dated March 27, 2014   (the "Chapter 15 Authorization Order"),[3] the Brazilian Bankruptcy Court explicitly authorized the Petitioner to commence an ancillary case in this District seeking chapter 15 recognition of the Brazilian Proceeding.  (Frgn. Rep. Decl. ¶ 18)

---

[3]     A copy of the original Chapter 15 Authorization Order (in Portuguese) as well as a certified English translation thereof are attached to the Foreign Representative Declaration as Exhibits E and F, respectively.

7

## RELIEF REQUESTED

17.    The Petitioner requests that this Court enter an order, substantially in the form of the Proposed Order attached hereto and pursuant to sections 105(a), 1509(b), 1517, 1520, 1521 and 1525 of the Bankruptcy Code:

    a.  granting the Chapter 15 Petition;

    b.  finding and concluding that the Brazilian Proceeding is a "foreign proceeding" as defined in section 101(23) of the Bankruptcy Code;

    c.  finding and concluding that the Petitioner is the "foreign representative" of the Brazilian Proceeding as defined in section 101(24) of the Bankruptcy Code;

    d.  finding and concluding that the Chapter 15 Petition, together with the Foreign Representative Declaration (and exhibits thereto), meets the requirements of section 1515 of the Bankruptcy Code;

    e.  recognizing the Brazilian Proceeding as a "foreign main proceeding" pursuant to section 1517 of the Bankruptcy Code;[4]

    f.  granting relief available as of the right upon recognition of a foreign main proceeding pursuant to chapter 15 of the Bankruptcy Code, including, without limitation, relief pursuant to sections 1509(b) and 1520 of the Bankruptcy Code;

    g.  granting additional appropriate relief authorized pursuant to section 1521(a) of the Bankruptcy Code and, to the extent necessary, Rule 65 of the Federal Rules of Civil Procedure as made applicable herein by Rule 7065 of the Federal Rules of Bankruptcy Procedure, including, without limitation:

        i.  staying the commencement or continuation of any action or proceeding without the consent of the Petitioner concerning the Debtor's assets, rights, obligations, or liabilities to the extent not stayed pursuant to section 1520(a)(1) of the Bankruptcy Code;

        ii.  staying execution against the Debtor's assets to the extent not stayed pursuant to section 1520(a)(2);

        iii.  suspending the right to transfer or otherwise dispose of any of the Debtor's assets to the extent this right has not been suspended pursuant to section 1520(a)(3);

---

[4]    Out of an abundance of caution, to the extent the Court determines the Debtor's center of main interests is not in Brazil, the Petitioner alternatively requests recognition of the Brazilian Proceeding is a "foreign nonmain proceeding".

    iv.   providing for the examination of witnesses, the taking of evidence or the delivery of information concerning the Debtor's assets, affairs, rights, obligations, or liabilities pursuant to section 1521(a)(4) of the Bankruptcy Code, Rule 2004 of the Federal Rules of Bankruptcy Procedure ("Rule 2004"), and Local Rule 2004-1 of the United States Bankruptcy Court for the Southern District of Florida ("Local Rule 2004-1"), and finding and concluding that any such examinations, evidence, or information is necessary and appropriate under the law of the United States to assist the Petitioner in the fulfillment of his duties as Judicial Administrator and Foreign Representative of the Brazilian Proceeding;

    v.   entrusting the administration or realization of all of the Debtor's assets within the territorial jurisdiction of the United States to the Petitioner pursuant to section 1521(a)(5) of the Bankruptcy Code; and

    vi.   granting any additional relief that may be available to a trustee, except for relief available under sections 522, 544, 545, 547, 550, and 724(a);

h.   entrusting the distribution of all of the Debtor's assets located within the United States to the Petitioner pursuant to section 1521(b) of the Bankruptcy Code;

i.   finding and concluding that the relief requested herein pursuant to section 1521 of the Bankruptcy Code sufficiently protects the interests of creditors and other interested entities, including the Debtor in satisfaction of section 1522(a) of the Bankruptcy Code;

j.   finding and concluding that neither recognition of the Brazilian Proceeding as a "foreign main proceeding" nor the additional relief requested in the Chapter 15 Petition is manifestly contrary to the public policy of the United States or otherwise prohibited pursuant to section 1506 of the Bankruptcy Code; and

k.   granting such other and further relief as this Court may deem just and proper.

## BASIS FOR RELIEF REQUESTED

**A.**   **The Court Should Recognize the Brazilian Proceeding as a Foreign Main Proceeding and the Petitioner as its Foreign Representative**

18.    Section 1517(a) of the Bankruptcy Code provides that, after notice and a hearing, the Court shall enter an order recognizing a foreign proceeding as a foreign main proceeding if (1) such foreign proceeding is a foreign main proceeding within the meaning of section 1502 of the Bankruptcy Code, (2) the foreign representative applying for recognition is a person or body, and (3) the petition meets the requirements of section 1515 of the Bankruptcy Code. See British

9

American Ins. Co. Ltd. v. Fullerton (In re British American Ins. Co. Ltd.), 488 B.R. 205, 213-14 (Bankr. S.D. Fla. 2013).  As explained below, venue in this District is proper, and the Brazilian Proceeding, the Petitioner and this Chapter 15 Petition satisfy all of the section 1517(a) requirements.

> **1.    The Court has Jurisdiction to Recognize the Brazilian Proceeding and Grant the Relief Requested**

19.    As noted above, this Court has jurisdiction to hear and determine chapter 15 cases as core matters pursuant to 28 U.S.C. §§ 157(b)(2)(P) and 1334, as well as Local District Rule 87.2 which incorporates the Standing Order of Reference.

20.    Sections 1504 and 1509(a) of the Bankruptcy Code provide that a chapter 15 case is properly commenced when a foreign representative files a petition for recognition of a foreign proceeding.  For the reasons discussed below, the Brazilian Proceeding qualifies as a "foreign proceeding" and the Petitioner qualifies as its "foreign representative."  Therefore, by filing this Chapter 15 Petition, the Petitioner properly commenced this chapter 15 case.  Moreover, VASP – as the entity subject to the Brazilian Proceeding – is eligible to be a chapter 15 "debtor" as that term is defined in section 1502(1) of the Bankruptcy Code.  To the extent applicable to chapter 15 cases, the requirement in section 109(a) of the Bankruptcy Code that a debtor have assets or business operations in the United States to be a debtor is also satisfied here.[5]  Specifically, VASP

---

[5]    Although the Second Circuit has held that the requirements of section 109(a) of the Bankruptcy Code must be satisfied by chapter 15 debtors, courts in other circuits have disagreed.  Compare Drawbridge Special Opportunities Fund LP v. Barnet (In re Barnet), 737 F.3d 238 (2d Cir. 2013), with Transcript of Bench Ruling on Dec. 17, 2013, at 8:14-9:18, In re Bemarmara Consulting A.S., Case No. 13-13037 (KG) (Bankr. D. Del. Filed Feb. 20, 2014) (refusing to apply section 109(a) to chapter 15 case and stating belief of "strong likelihood" that the Third Circuit would not agree with the Second Circuit's Drawbridge decision).  The Petitioner respectfully submits that the Eleventh Circuit would not conclude that section 109(a) applies to chapter 15 cases, consistent with its decisions prior to the enactment of chapter 15.  See, e.g., Goerg v. Parungao, 844 F.2d 1562, 1567-68 (11th Cir. 1988) (holding foreign proceeding should be granted comity pursuant to former section 304 of Bankruptcy Code regardless of whether foreign debtor meets eligibility requirements of section 109).  In any event, the Petitioner does not concede that section 109(a) applies to this case and reserves all of its rights to argue otherwise.

has deposited estate funds in an account maintained by Kobre & Kim LLP at Citibank, N.A. in Miami, Florida (the "Escrow Account").  (Frgn. Rep. Decl. ¶ 21)  The Debtor retains full ownership of the funds in the Escrow Account unless and until they are released at the Petitioner's direction.  (Frgn. Rep. Decl. ¶ 21)  Additionally, the Petitioner anticipates that through recognition of the Brazilian Proceeding and the exercise of discovery powers requested herein, he will be able to identify additional assets and/or causes of action belonging to the Debtor located in the territorial jurisdiction of the United States.  (Frgn. Rep. Decl. ¶ 21)  The Petitioner submits that these assets satisfy the requirement of section 109(a) of the Bankruptcy Code.  See, e.g., In re Suntech Power Holdings Co., Ltd., 520 B.R. 399, 412-13 (Bankr. S.D.N.Y. 2014) (concluding section 109(a) satisfied by escrow account established using funds of debtor one day before chapter 15 petition was filed (citing In re Octaviar Admin. Pty Ltd., 511 B.R. 361, 372-73 (Bankr. S.D.N.Y. 2014) (finding section 109(a) satisfied by potential causes of action and funds in retainer account with foreign representative's U.S. law firm)).

21.     Venue is also proper in this District.  Section 1410 of Title 28 of the United States Code provides that a chapter 15 case "may be commenced in the district court of the United States for the district (1) in which the debtor has its principal place of business or principal assets in the United States, (2) if the debtor does not have a place of business or assets in the United States, in which there is pending against the debtor an action or proceeding in a Federal or State court, or (3) in a case other than those specified in paragraph (1) or (2), in which venue will be consistent with the interests of justice and the convenience of the parties, having regard to the relief sought by the foreign representative."  28 U.S.C. § 1410.  As described above, the Debtor has no place of business in the United States, having ceased all flights into the United States on or prior to 2002, and substantially all of its business operations worldwide on or before the

conversion of the Brazilian proceeding from reorganization to a liquidation in 2008.  (Frgn. Rep. Decl. ¶ 23)  Thus, to the best of the Petitioner's information and belief, as of the date hereof, the Debtor has no employees or operations in the United States; nor is the Debtor party to any lawsuits in the United States.  (Frgn. Rep. Decl. ¶ 23)  The Debtor's sole known property of value in the United States, and therefore its principal assets, are the funds held in the Escrow Account located in in this District.[6]  (Frgn. Rep. Decl. ¶ 23)  Moreover, because Miami is known as a financial and legal center within the United States for both Brazilian companies with international operations and wealthy Brazilian individuals – as evidenced by the fact that more than half of all chapter 15 cases seeking recognition of Brazilian proceedings have been commenced in this District (see infra ¶ 26) – the Petitioner believes that the interests of justice are served by establishing venue in this District.  (Frgn. Rep. Decl. ¶ 23)  Accordingly, the Petitioner respectfully submits that venue in this District is proper pursuant to both sections 1410(1) and 1410(3) of Title 28 of the United States Code.

### 2. The Brazilian Proceeding Is a Foreign Main Proceeding

22.     The Brazilian Proceeding is a "foreign main proceeding" as defined in section 1502(4) of the Bankruptcy Code.

23.     *First*, the Brazilian Proceeding comes within the general definition of "foreign proceeding" as set forth in section 101(23) of the Bankruptcy Code.  Section 101(23) requires that a "foreign proceeding" be (1) a collective judicial or administrative proceeding relating to insolvency or adjustment of debt, (2) pending in a foreign country, (3) under the supervision of a foreign court and (4) for the purpose of reorganizing or liquidating the assets and affairs of the

---

[6]     The Petitioner's investigation to date of the Debtor's assets has revealed possible VASP bank accounts within the United States.  As of the date hereof, however, the Petitioner has not been able to determine the location of such accounts or the amount of funds remaining therein, if any.  (Frgn. Rep. Decl. ¶ 23)

debtor.  See 11 U.S.C. § 101(23).  The Bankruptcy Code defines "foreign court" as "a judicial or other authority competent to control or supervise a foreign proceeding."  See 11 U.S.C. § 1502(3).

24.    The Brazilian Proceeding fits squarely within the Bankruptcy Code's definition of a "foreign proceeding."   Insolvency proceedings in Brazil are governed by the Brazilian Bankruptcy Law, which came into effect on June 9, 2005.  (Frgn. Rep. Decl. ¶ 25)  The Brazilian Bankruptcy Law provides for bankruptcy liquidation proceedings as well as two forms of reorganization: (1) a court-supervised reorganization proceeding known as *recuperacao judicial* ("judicial reorganization"), and (2) an expedited reorganization proceeding known as *recuperacao extrajudicial* ("extra-judicial reorganization").  (Frgn. Rep. Decl. ¶ 25)  As a general rule, once a judicial reorganization has commenced, the debtor retains the right to administer its assets and affairs and may continue to run its business.  (Frgn. Rep. Decl. ¶ 25)  A judicial administrator (*administrador judicial*) is appointed by the court and is responsible for, among other things, overseeing the debtor's management of its day-to-day affairs and managing the claims verification process and informing the court when the debtor fails to meet its obligations under the plan or otherwise commits malfeasance.   (Frgn. Rep. Decl. ¶ 25) Moreover, once a judicial reorganization has commenced, the reorganization proceeding may be converted into a liquidation proceeding at any time.  (Frgn. Rep. Decl. ¶ 25)  Once a proceeding is converted to a liquidation, Brazilian Bankruptcy Law provides that officers and directors of the debtor company are no longer allowed to manage its affairs and the assets of the debtor are collected and sold by the judicial administrator under the continued supervision of the Brazilian Bankruptcy Court.  (Frgn. Rep. Decl. ¶ 25)

25.     As noted above, the Brazilian Bankruptcy Court entered the Commencement Order commencing the Brazilian Proceeding as a judicial reorganization under Brazilian Bankruptcy Law and appointing Petitioner as Judicial Administrator thereof on October 7, 2005. (Frgn. Rep. Decl. ¶ 26)  As also noted above, following the Debtor's failure to fulfill certain obligations under the Brazilian Plan, the Debtor's creditors voted to convert the Brazilian Proceeding from a judicial reorganization to a liquidation pursuant to Brazilian Bankruptcy Law. (Frgn. Rep. Decl. ¶ 26)  The Petitioner has remained the Judicial Administrator of the Brazilian Proceeding since conversion, and continues to fulfill his obligations to collect and liquidate the Debtor's assets under Brazilian Bankruptcy Law and the supervision of the Brazilian Bankruptcy Court.   (Frgn. Rep. Decl. ¶ 26)   Accordingly, the Petitioner respectfully submits that the Brazilian Proceeding qualifies as a "foreign proceeding" for purposes of chapter 15 recognition.

26.     Consistent with the foregoing, Petitioner's U.S. counsel has identified a total of at least seventeen (17) unrelated cases that have been commenced seeking chapter 15 recognition of a Brazilian proceeding governed by Brazilian Bankruptcy Law, including at least ten (10) in this District.[7]  In every one of these cases, the Brazilian proceeding was found to be a "foreign proceeding" for purposes of granting chapter 15 recognition.  See In re Aralco S.A. – Industria e Comercio, Case No. 15-10419 (REG) [Docket No. 22] (Bankr. S.D.N.Y. Apr. 21, 2015) (recognizing Brazilian liquidation proceeding pending under Brazilian Bankruptcy Law as "foreign proceeding"); In re Probobank S.A., Case No. 14-37790 (AJC) [Docket No. 8] (Bankr. S.D. Fla. Feb. 19, 2015) (same); In re Banco Cruzeiro do Sul S.A., Case No. 14-22974 (LMI) [Docket No. 16] (Bankr. S.D. Fla. July 11, 2014) (same); In re Industria de Alimentos Nilza

---

[7]     An eighteenth case was recently commenced in the United States Bankruptcy Court for the Southern District of New York, in which a hearing on chapter 15 recognition has not yet been held.  See In re OAS S.A., et al., Case No. 15-10937 (SMB) (Bankr. S.D.N.Y.).

14

S.A., Case No. 14-22589 (RAM) [Docket No. 8] (Bankr. S.D. Fla. July 2, 2014) (same); In re Petroforte Brasileiro de Petroleo Ltda., Case No. 14-15408 (RAM) [Docket No. 7] (Bankr. S.D. Fla. Mar. 27, 2014) (same); In re Banco Pontual S.A., Case No. 13-35298 (LMI) [Docket No. 10] (Bankr. S.D. Fla. Nov. 14, 2013) (same); In re Enco Zolcsak Eguipamentos Industriais Ltda., Case No. 1122924 [Docket No. 15] (Bankr. S.D. Fla. July 12, 2011) (same); In re Transbrasil S.A. Linhas Aereas, Case No. 11-19484 [Docket No. 9] (Bankr. S.D. Fla. May 11, 2011) (same); In re Banco Santos, S.A., Case No. 10-47543 [Docket No. 9] (Bankr. S.D. Fla. Jan. 2011) (same); In re Fazendas Reunidas Boi Gordo, S.A., Case No. 09-37116 [Docket No. 7] (Bankr. S.D. Fla. Jan. 11, 2010) (same); In re VarigLogistica S.A., Case No. 09-15717 [Docket No. 77] (Bankr. S.D. Fla. May 11, 2009) (recognizing Brazilian judicial reorganization proceeding pending under Brazilian Bankruptcy Law as "foreign proceeding"); see also In re Sifco S.A., Case No. 14-11179 (REG) [Docket No. 38] (Bankr. S.D.N.Y. Oct. 23, 2014) (same); In re Lupatech S.A., Case No. 14-11559 (SMB) [Docket No. 26] (Bankr. S.D.N.Y. June 26, 2014) (same); In re Rede Energia S.A., Case No. 14-10078 (SCC) [Docket No. 18] (Bankr. S.D.N.Y. Mar. 6, 2014) (same); Centrais Eletricas Do Para S.A., Case No. 12-14568 (SCC) [Docket No. 19] (Bankr. S.D.N.Y. Dec. 12, 2012) (same); In re Independencia S.A., Case No. 09-10903 [Docket No. 23] (Bankr. S.D.N.Y. Mar. 26, 2009) (same); In re ITSA Intercontinental Telecomunicacoes Ltda., Case No. 08-13927 [Docket No. 16] (Bankr. S.D.N.Y. Jan. 29, 2009) (recognizing Brazilian extra-judicial reorganization proceeding pending under Brazilian Bankruptcy Law as "foreign proceeding").

27.   *Second*, the Brazilian Bankruptcy Proceeding qualifies as a "foreign main proceeding."  A "foreign main proceeding" is defined in the Bankruptcy Code as a "foreign proceeding pending in the country where the debtor has the center of its main interests."  11

U.S.C. § 1502(4).  The Bankruptcy Code neither defines nor provides a conclusive test for determining the location of a debtor's center of main interests ("COMI").  However, "[i]n the absence of evidence to the contrary," there is a statutory presumption that a debtor's "registered office" is its COMI.  See 11 U.S.C. § 1516(c).  To determine a debtor's COMI, this court and others have placed importance on the ability of third parties to readily ascertain a corporate debtor's COMI based on "where the debtor conducts its regular business . . . . Among other factors that may be considered are the location of headquarters, decision-makers, assets, creditors, and the law applicable to most disputes."  Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.), 714 F.3d 127, 130 (2d Cir. 2013); see also In re British Am. Ins. Co., 425 B.R. 884, 912 (Bankr. S.D. Fla. 2010) ("The location of a debtor's COMI should be readily ascertainable by third parties."); In re Ran, 390 B.R. 257, 266 (Bankr. S.D. Tex. 2008) ("A debtor's centre of main interests must be identified by reference to criteria that are both objective and ascertainable by third parties.") (internal quotation marks omitted) (citing European Council Regulation No. 1346/2000 of 29 May 2000).  Additionally, where, as here, there is a delay between the commencement of a foreign proceeding and the commencement of the chapter 15 case, the court may also consider relevant activities during that gap period such as liquidation activities and administrative functions.  See, e.g., In re Fairfield Sentry Ltd., 714 F.3d at 137; In re Suntech Power Holdings Co., Ltd., 520 B.R. 399, 419 (Bankr. S.D.N.Y. 2014) (concluding, over objection, that debtor's COMI as of chapter 15 filing date was Cayman Islands despite finding Cayman Islands was not its COMI when the foreign liquidation proceeding was commenced, based on activities of provisional liquidators during period between filings).

28.    At all times since it began operations in 1933, VASP has been incorporated and headquartered in São Paulo, Brazil.  (Frgn. Rep. Decl. ¶ 28)  Indeed, VASP – whose full name,

Viação Área São Paulo S.A. roughly translates in English to the Commercial Airline of São Paulo – was owned by the Government of the State of São Paulo from 1935 until its purchase in 1990 by Mr. Canhedo.  (Frgn. Rep. Decl. ¶ 28)  For the majority of its history, VASP was one of the largest and most recognizable Brazilian airlines.  (Frgn. Rep. Decl. ¶ 28)  Similarly, Mr. Canhedo is widely seen throughout Latin America as one of Brazil's most recognizable and wealthy businessmen.  (Frgn. Rep. Decl. ¶ 28)  To this day, he and/or members of his family own and operate a number of well-known Brazilian businesses, including bus transportation operation, various farms or cattle ranches, and hotel properties all located in Brazil.  (Frgn. Rep. Decl. ¶ 28)

29.    Moreover, VASP's Brazilian Proceeding has been pending before the Brazilian Bankruptcy Court for over nine years now.  (Frgn. Rep. Decl. ¶ 29)  During the first years of the Brazilian Proceeding, VASP continued to operate out of São Paulo while it sought approval of and then attempted to implement the Brazilian Plan.  (Frgn. Rep. Decl. ¶ 29)  In 2008, when implementation of that plan failed, VASP's creditors overwhelmingly voted to convert the Brazilian Proceeding to a liquidation.  (Frgn. Rep. Decl. ¶ 29)  Since then, the Petitioner – a solo practitioner located in São Paulo – has now spent over six years collecting and liquidating VASP's assets, which to date have largely been Brazilian assets, under the continuing supervision of the Brazilian Bankruptcy Court.  (Frgn. Rep. Decl. ¶ 29)  The Petitioner is not aware of the existence of any insolvency proceeding concerning VASP other than the Brazilian Proceeding, nor is he aware of any suggestion having been made at any time during its pendency by a creditor or party in interest that VASP's center of main interest is anywhere other than Brazil.  (Frgn. Rep. Decl. ¶ 29)

30. Thus, based on the facts present in this case, the Petitioner respectfully submits that São Paulo, State of São Paulo, Brazil should be held to be the center of the Debtor's main interests. Accordingly, given that it is pending in the Debtor's COMI, the Brazilian Proceeding should be recognized as a "foreign main proceeding" pursuant to section 1517(b)(l) of the Bankruptcy Code.

### 3.      The Petitioner is a Proper "Foreign Representative"

31. The second requirement for recognition of a foreign main proceeding under section 1517(a) of the Bankruptcy Code is that the "foreign representative" applying for recognition be a person or body. See 11 U.S.C. § 1517(a)(2). Section 101(24) of the Bankruptcy Code provides that

> The term "foreign representative" means a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24).

32. Here, the Petitioner is an individual who has been duly appointed by the Brazilian Bankruptcy Court to act as the Judicial Administrator of the Brazilian Proceeding.[8] (Frgn. Rep. Decl. ¶ 31) In such capacity, while the Brazilian Proceeding was in judicial reorganization, the Petitioner, among other things, oversaw the Debtor's management of its day-to-day affairs and managed the claims verification process. (Frgn. Rep. Decl. ¶ 31) Once the Brazilian Proceeding was converted to a liquidation, the Petitioner's roll expanded to include the collection and liquidation of the Debtor's assets under the continued supervision of the Brazilian Bankruptcy

---

[8]      As noted above, a copy of the original Commencement Order (in Portuguese) as well as a certified English translation thereof are attached to the Foreign Representative Declaration as Exhibits A and B, respectively. In addition, a copy of the notice issued by the Brazilian Bankruptcy Court on October 10, 2005 confirming that the Petitioner had accepted his appointment as Judicial Administrator (in Portuguese) as well as a certified English translation thereof are attached to the Foreign Representative Declaration as Exhibits C and D, respectively.

Court.  (Frgn. Rep. Decl. ¶ 31)  Moreover, by the Chapter 15 Authorization Order, the Brazilian Bankruptcy Court explicitly authorized the Petitioner to commence an ancillary case in the District seeking chapter 15 recognition of the Brazilian Proceeding.  (Frgn. Rep. Decl. ¶ 31)  For these reasons, the Petitioner respectfully submits that he is a "foreign representative" who is a "person or body" in satisfaction of sections 101(24) and 1517(a)(2) of the Bankruptcy Code.

### 4.      The Chapter 15 Petition Satisfies the Requirements of Section 1515

33.     The third and final requirement for recognition of a foreign proceeding under section 1517(a) of the Bankruptcy Code is that the petition for recognition meets the procedural requirements of section 1515 of the Bankruptcy Code.  See 11 U.S.C. § 1517(a)(3).  Specifically, as relevant here, section 1515 requires a petition for recognition of a foreign proceeding to be accompanied by "a certified copy of the decision commencing such proceeding and appointing the foreign representative"[9] and "a statement identifying all foreign proceedings with respect to the debtor that are known to the foreign representative."  11 U.S.C. §§  1515(b)(1) and (c).

34.     Here, all of those procedural requirements are satisfied.  As noted above, the Brazilian Proceeding was commenced, and the Petitioner was appointed as Judicial Administrator thereto, pursuant to the Commencement Order.  (Frgn. Rep. Decl. ¶ 32)  In addition, the Brazilian Bankruptcy Court expressly authorized the Petitioner to commence this chapter 15 case and act as foreign representative of the Brazilian Proceeding in the Chapter 15 Authorization Order.  (Frgn. Rep. Decl. ¶ 32)  In accordance with section 1515(b)(1) of the Bankruptcy Code, copies of the original Commencement Order and Chapter 15 Authorization Order (in Portuguese) as well as a certified English translations thereof are attached to the Foreign Representative Declaration as Exhibits A, B, C and D, respectively.  Finally, in

---

[9]     Additionally, section 1515(d) requires such certified copy to be translated into English.  See 11 U.S.C. §  1515(d).

accordance with section 1515(c) of the Bankruptcy Code, paragraph 33 of the Foreign Representative Declaration contains a statement identifying the Brazilian Proceeding as the only foreign proceeding currently pending with respect to the Debtor.

*      *      *

35.    For all of the reasons set forth above, the Petitioner respectfully submits that all of the requirements of section 1517(a) have been satisfied, and that the Petitioner and/or the Debtor, as applicable, are entitled to all of the relief provided as of right upon recognition under chapter 15 of the Bankruptcy Code.[10]    Accordingly, the Court should enter the Proposed Order recognizing the Brazilian Proceeding as a foreign main proceeding.

## B.    The Court Should Grant the Foreign Representative's Request for Discretionary Relief under Chapter 15 of Bankruptcy Code

36.    In addition to the relief automatically provided under sections 1509(b) and 1520 of the Bankruptcy Code upon recognition of the Brazilian Proceeding, the Petitioner requests that this Court provide additional relief and assistance pursuant to sections 105(a), 1521 and 1525 of the Bankruptcy Code as follows.

### 1.    The Relief Requested Pursuant to Sections 1521 is Warranted and Appropriate Under the Circumstances

37.    Upon recognition of a foreign proceeding and at the request of a foreign representative, the Court may grant (with certain express exceptions not applicable here) "any appropriate relief," including any injunctive relief and "any additional relief that may be available to a trustee," that is necessary to effectuate the purpose of chapter 15 and to protect the

---

[10]    Upon recognition of the Brazilian Proceeding as a foreign main proceeding, certain relief is automatically granted as a matter of right, including, among other things, the right of the Petitioner to direct access in other Federal and State courts in the United States, and a stay that enjoins actions against and otherwise protects the Debtor. See 11 U.S.C. §§ 1509(b) and 1520, respectively. In addition, upon the Court's recognition of the Brazilian Bankruptcy Proceeding as a foreign main proceeding, section 1520(a){l} of the Bankruptcy Code triggers the automatic stay provisions of section 362 of the Bankruptcy Code with respect to the Debtor.

assets of the debtor or the interests of the creditors.  11 U.S.C. § 1521(a).  Such relief may "include,"[11] among other relief:

> (1)    staying the commencement or continuation of an individual action or proceeding concerning the debtor's assets, rights, obligations or liabilities to the extent they have not been stayed under section 1520(a);
>
> (2)    staying execution against the debtor's assets to the extent it has not been stayed under section 1520(a);
>
> (3)    suspending the right to transfer, encumber or otherwise dispose of any assets of the debtor to the extent this right has not been suspended under section 1520(a);
>
> (4)    providing for the examination of witnesses, the taking of evidence or the delivery of information concerning the debtor's assets, affairs, rights, obligations or liabilities;
>
> (5)    entrusting the administration or realization of all or part of the debtor's assets within the territorial jurisdiction of the United States to the foreign representative . . . ;
>
> (6)    extending relief granted under section 1519(a);[12] and
>
> (7)    granting any additional relief that may be available to a trustee, except for relief available under sections 522, 544, 545, 547, 548, 550, and 724(a).

11 U.S.C. § 1521(a).  Additionally, section 1521(b) provides that "[u]pon recognition of a foreign proceeding, whether main or nonmain, the court may, at the request of the foreign representative, entrust the distribution of all or part of the debtor's assets located in the United States to the foreign representative . . . provided that the court is satisfied that the interests of creditors in the United States are sufficiently protected."  11 U.S.C. § 1521(b).

     38.    The Petitioner requests that the Court grant the relief authorized by sections 1521(a) and (b) of the Bankruptcy Code.

---

[11]    The term "including" (as set forth in section 1521(a)) is not limiting.  See 11 U.S.C. § 102(3).

[12]    The Foreign Representative is not requesting any relief pursuant to section 1519 of the Bankruptcy Code at this time, but reserves all rights to do so should the need arise prior to recognition of the Brazilian Proceeding as a foreign main proceeding.

39.    *First*, to the extent not otherwise stayed under sections 1520 and 362 of the Bankruptcy Code, the Petitioner requests that the Court, in its discretion under sections 1521(a)(1), (2) and (3) of the Bankruptcy Code, enter a stay against any parties that may attempt to commence prepetition or post-petition actions and/or claims in the United States against the Debtor or its property, or otherwise attempt to transfer, encumber or dispose of such property. (Frgn. Rep. Decl. ¶ 36)  The Petitioner fears that certain creditors may take actions in the United States against the Debtor or its property – especially property which the Petitioner has yet to identify as belonging to the Debtor and/or recoverable for distribution to the Debtor's creditors – seeking to obtain more than the distribution they are entitled under the Brazilian Bankruptcy Law.  (Frgn. Rep. Decl. ¶ 36)  If such creditors can effectively evade the Brazilian Proceeding by commencing actions in the United States, the Petitioner, on behalf of the Debtor's estate, would be left to defend against these suits, regardless of their merit.  (Frgn. Rep. Decl. ¶ 36)  This could irreparably deplete the resources available to the Petitioner to collect and administer the Debtor's assets and the resulting distributions to creditors in the Brazilian Proceeding.  (Frgn. Rep. Decl. ¶ 36)  See, e.g., In re MMG LLC, 256 B.R. 544, 555 (Bankr. S.D.N.Y. 2000) ("As a rule . . . irreparable harm exists whenever local creditors of the foreign debtor seek to collect their claims or obtain preferred positions to the detriment of the other creditors."); In re Rubin, 60 B.R. 269, 283 (Bankr. S.D.N.Y. 1993) ("[T]he premature piecing out of property involved in a foreign liquidation proceeding constitutes irreparable injury." (quoting In re Lines, 81 B.R. 267, 270 (Bankr. S.D.N.Y. 1988)).  For these reasons, an additional stay pursuant to sections 1521(a)(1) and (2) would protect the interests of all of the Debtor's creditors in having claims against the Debtor and its estate valued and paid on a consistent, non-discriminatory basis as determined by the Brazilian Bankruptcy Court.[13]  (Frgn. Rep. Decl. ¶ 36)

---

[13]    The Petitioner submits that, to the extent the standards, procedures and limitations applicable to

40.     *Second*, the Petitioner requests that the Court enter an order authorizing him to examine witnesses and take evidence and information concerning the Debtor's assets, affairs, rights, obligations or liabilities pursuant to section 1521(a)(4) of the Bankruptcy Code.  As is clear by the background of the Brazilian Proceeding set forth above, the Petitioner has reason to believe that a substantial amount of property belonging to the Debtor was improperly transferred away in the lead-up to the commencement of, and in some cases after, the commencement of the Brazilian Proceeding.  (Frgn. Rep. Decl. ¶ 37)  In accordance with his duties as Judicial Administrator, the Petitioner is investigating these transfers in an attempt to find additional assets that should be collected and distributed to the Debtor's creditors in the Brazilian Proceeding. (Frgn. Rep. Decl. ¶ 37)  That investigation has expanded beyond the borders of Brazil and led the Petitioner to believe that such assets exist within the United States, among other countries. (Frgn. Rep. Decl. ¶ 37)  In fact, obtaining relief under section 1521(a)(4) is central to the purpose for which the Brazilian Bankruptcy Court directed the Petitioner to commence a chapter 15 case. (Frgn. Rep. Decl. ¶ 37)

41.     The Debtor is not currently party to any U.S. litigation and, therefore, without authorization from this Court, the Petitioner will not have immediate means to otherwise obtain discovery or compel disclosures from third parties.  (Frgn. Rep. Decl. ¶ 37) Moreover, the relief requested is consistent with relief granted by this and other courts upon granting chapter 15

---

an injunction are applicable to this request, they are satisfied.  See 11 U.S.C. § 1521(e); Fed. R. Bankr. P. 7065 (incorporating Fed. R. Civ. P. 65).  For all the reasons set forth herein, among others, the Petitioner submits that (i) he will be successful on the merits in his request for recognition of the Brazilian Proceeding as a foreign proceeding and, in any event, such recognition will occur simultaneously with or prior to the granting of any relief to the Petitioner pursuant to section 1521 of the Bankruptcy Code, (ii) irreparable harm will result in the absence of injunctive relief, (iii) injunctive relief would not cause undue hardship or prejudice to the rights of any U.S. based creditors, and (iv) public policy supports the requested relief.  The Petitioner reserves the right to set forth more fully the basis for injunctive relief at the request of the Court or in the event such relief is objected to by a party in interest.  (Frgn. Rep. Decl. ¶ 36)  The Petitioner reserves the right to set forth more fully the bases for this relief at the request of the Court or in the event such relief is objected to by a party in interest.  (Frgn. Rep. Decl. ¶ 36, fn. 5)

recognition.  See, e.g., Transbrasil S.A. Linhas Aereas, Case No. 11-19484, 2014 WL 1655990 (Bankr. S.D. Fla. Apr. 25, 2014) (adjudicating third-party motions with respect to Rule 2004 examination and document requests made by foreign representative pursuant to section 1521(a)(4)), *aff'd in part, rev'd on other grounds,* Case No. 14–cv–22580 (KMM) [Docket No. 27] (S.D. Fla. March 30, 2015); In re Hughes, 281 B.R. 224, 227-230 (Bankr. S.D.N.Y. 2002) (holding, under statutory predecessor to Chapter 15, that scope of discovery in ancillary case was not limited by discovery available under law governing foreign proceeding, and noting that the same principle would apply under then-proposed section 1521(a)(4)).   Accordingly, the Petitioner submits that authorization under section 1521(a)(4) is warranted and appropriate here.

42.    *Third*, and finally, to the extent not provided by sections 1520 and 363 of the Bankruptcy Code, the Petitioner requests that the Court enter an order entrusting the administration, realization, and distribution of all of the Debtor's assets within the territorial jurisdiction of the United States to the Petitioner.  (Frgn. Rep. Decl. ¶ 38)  Akin to the duties of a chapter 7 trustee pursuant to section 704 of the Bankruptcy Code, the Petitioner (in his capacity as Judicial Administrator of the Brazilian Proceeding) is charged with liquidating the Debtor's assets and distributing the proceeds thereof in accordance with Brazilian Bankruptcy Law and under the supervision of the Brazilian Bankruptcy Court.  (Frgn. Rep. Decl. ¶ 38)  Arguably, by continuing to fulfilling these duties in the ordinary course of his appointment as Judicial Administrator and Foreign Representative of the Brazilian Proceeding with respect to assets identified and collected in the territorial United States, the Petitioner will be exercising the rights and powers provided to him as of right upon recognition pursuant to section 1520(a)(3) of the Bankruptcy Code.  Nevertheless, the Petitioner submits a more express grant of authority by the Court pursuant to sections 1521(a)(5) and 1521(b) of the Bankruptcy Code is warranted and

appropriate.  Among other benefits, such relief would avoid the administrative cost and delay attendant to requesting similar relief in a piece-meal fashion for every asset subject to the Brazilian Proceeding that the Petitioner identifies as being located within the United States.[14] (Frgn. Rep. Decl. ¶ 38)

> **2.**      **The Relief Requested Sufficiently Protects the Interests of Creditors**

43.      Before granting relief pursuant to section 1521 of the Bankruptcy Code, the Court must be satisfied that "the interests of creditors and other interested entities, including the debtor, are sufficiently protected."  11 U.S.C. § 1522(a).  Although the Bankruptcy Code does not define "sufficient protection," the legislative history indicates that the prohibition applies where "it is shown that the foreign proceeding is seriously and unjustifiably injuring United States creditors." H. Rep. No. 109-31, pt. 1, 109th Cong., 1st Sess. 116 (2005).  Courts have construed section 1522 to require a balance of the potentially competing interests among the parties to a foreign proceeding and to provide the Court with broad latitude in granting relief to meet specific circumstances.  See, e.g., In re Atlas Shipping N S., 404 B.R. 726, 740 (Bankr. S.D.N.Y. 2009).

44.      Here, the Debtor's creditors are "sufficiently protected" by the treatment afforded to them in the Brazilian Proceeding under Brazilian Bankruptcy Law.  (Frgn. Rep. Decl. ¶ 39)  In particular, U.S. claimants (if any) are not being subjected to undue inconvenience or prejudice because, for example, Brazilian Bankruptcy Law does not create any additional burdens for foreign creditors to file a claim and confers upon them the same status and rights as creditors in Brazil.  (Frgn. Rep. Decl. ¶ 39)  Moreover, the distribution scheme in liquidation prescribed under Brazilian Bankruptcy Law, is substantially in accordance to that under the Bankruptcy Code, as it grants priority to certain administrative claims and grants secured claims priority over

---

[14]      Of course, the Trustee will comply with any notice or reporting requirements that the Court may deem necessary or appropriate.

unsecured claims. (Frgn. Rep. Decl. ¶ 39) Accordingly, the ultimate distributions creditors will receive on account of their claims in the Brazilian Proceeding will be materially consistent with those they would have received under U.S. law. (Frgn. Rep. Decl. ¶ 39) While there may be exceptions on a case by case basis, courts have consistently held that the fact that certain creditors "may be denied an advantage over the debtor's other . . . creditors is not a valid reason to deny relief to the foreign representative." Atlas Shipping, 404 B.R. at 742. Accordingly, the Petitioner submits that the relief requested pursuant to section 1521 of the Bankruptcy Code is should not be prohibited or limited by section 1522.

### 3. The Relief Requested Is Consistent with the Purposes of Chapter 15 and the Court's Mandate to Cooperate to the Maximum Extent Possible

45. The relief requested herein is founded on the congressional mandate that United States courts should cooperate with foreign proceedings and foreign representatives to promote the goals of chapter 15. Section 1525 of the Bankruptcy Code provides, in pertinent part, that "[c]onsistent with section 1501, the court shall cooperate to the maximum extent possible with a foreign court or a foreign representative, either directly or through the trustee." 11 U.S.C. § 1525(a). In turn, section 1501 provides, in pertinent part, that "[t]he purpose of [chapter 15 of the Bankruptcy Code] is to incorporate the Model Law on Cross-Border Insolvency so as to provide effective mechanisms for dealing with cases of cross-border insolvency with the objectives of:

> (1)     cooperation between (A) courts of the United States . . . and (B) the courts and other competent authorities of foreign countries involved in cross-border insolvency cases;
>
> (2)     greater legal certainty for trade and investment;
>
> (3)     fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested parties, including the debtor;
>
> (4)     protection and maximization of the value of the debtor's assets; and

26

(5)     facilitation of the rescue of financially troubled businesses, thereby protecting investments and preserving employment.

11 U.S.C. § 1501(a).

46.     All of the relevant objectives will be furthered by granting the relief requested herein.[15]  By recognizing the Brazilian Proceeding as a "foreign main proceeding" and enjoining creditors from commencing or continuing actions against the Debtor or its assets in the United States, the Court would be fostering cooperation between courts in Brazil and the United States and ensuring that the fair and efficient administration of the Debtor's assets in the Brazilian Proceeding cannot be disrupted by creditors or other parties in interest outside of Brazil.  (Frgn. Rep. Decl. ¶ 40)  Moreover, by empowering the Petitioner to employ the means of investigation and discovery available under United States law and procedure, this Court would be protecting and maximizing the value of U.S. assets belonging to or absconded from the Debtor and promoting legal certainty by ensuring those assets are collected and administered by the Petitioner in accordance with Brazilian Bankruptcy Law.  (Frgn. Rep. Decl. ¶ 40)

**4.      The Relief Requested Is Consistent with the Court's Equitable Authority**

47.     Finally, section 105(a) of the Bankruptcy Code enables the Court to enforce the specific statutory language of the Bankruptcy Code's other provisions consistent with the Court's broad equitable powers.  See 11 U.S.C. § 105(a) ("[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title").  The Petitioner believes that the relief requested herein is expressly provided for by the statutory provisions of chapter 15, as set forth above.  Out of an abundance of caution, however, to the extent that is not the case, the Petitioner submits that the relief requested is warranted under

---

[15]     Because the Brazilian Proceeding is a liquidation rather than a reorganization, the objective set forth in section 1501(a)(5) is moot.

section 105(a) of the Bankruptcy Code, as it is wholly consistent the express provisions of Bankruptcy Code and fair and equitable to all parties involved.

*       *       *

48.     For the foregoing reasons, the Petitioner respectfully requests that this Court grant the relief requested by the Petitioner through exercise of its discretionary authority pursuant to section 1521, its mandate to cooperate with the Brazilian Court and the Petitioner pursuant to sections 1525 and 1501(a), and its equitable powers pursuant to section 105(a) of the Bankruptcy Code.

**C.      The Court Should Find and Conclude that None of the Relief Requested is Manifestly Contrary to the Public Policy of the United States**

49.     The Court may deny a request for any relief under chapter 15 that would be "manifestly contrary to the public policy of the United States." 11 U.S.C. § 1506. The legislative history indicates that the "public policy" exception is narrow, applying only to the "most fundamental policies of the United States." H.R. Rep. No. 109-31, pt. 1, 109th Cong., 1st Sess. 109 (2005). "The narrow public policy exception contained in § 1506 is intended to be invoked only under exceptional circumstances concerning matters of fundamental importance for the United States. The key determination  . . .  is whether the procedures used [in the foreign proceeding] meet our fundamental standards of fairness." Ad Hoc Group of Vitro Noteholders v. Vitro, S.A.B. de C.V. (In re Vitro, S.A.B. de C.V.), 701 F.3d 1031, 1069 (5th Cir. 2012) (internal citations omitted). Importantly, it is not necessary that the result achieved in a foreign proceeding be identical to what could be obtained in the United States – "even the absence of certain procedural or constitutional rights will not itself be a bar under § 1506." Id. Thus, a foreign representative should not be denied comity simply because the relief obtained in the

foreign proceeding under the applicable law of that country would not be available in the United States.  See In re Condor Ins. Ltd., 601 F.3d 319, 327 (5th Cir. 2010).

50.    The Petitioner submits that neither the Brazilian Proceeding nor the relief requested in the Chapter 15 Petition warrant invocation of section 1506.  Pursuant to  Brazilian Bankruptcy Law, the Brazilian Proceeding has provided (and continues to provide) creditors and other parties in interest with the notice and opportunities to participate and be heard that are wholly consistent with concepts of due process under United States law and jurisprudence. (Frgn. Rep. Decl. ¶ 41)  Moreover, since its conversion to a liquidation, the Brazilian Proceeding has played out in a manner substantially similar to a chapter 7 case under the Bankruptcy Code, with a centralized process to assert and resolve claims against the estate and a court-appointed and supervised trustee (i.e., the Petitioner) responsible for collecting and liquidating the debtor's assets and making distributions to creditors.  (Frgn. Rep. Decl. ¶ 41)  In sum, the relief requested herein effectively extends this liquidation process into the United States, ensuring that assets belonging to or absconded from the Debtor located within the territorial U.S. do not escape the reach of the Brazilian Proceeding and empowering the Petitioner to employ the means of investigation and discovery that are afforded as of right to trustees in plenary U.S. bankruptcy cases.  (Frgn. Rep. Decl. ¶ 41)  None of the relief requested is contrary, let alone manifestly so, to United States law or public policy.

51.    Accordingly, the Petitioner respectfully requests that the Court find and determine that recognizing the Brazilian Proceeding as a "foreign main proceeding" and granting the additional relief requested in the Chapter 15 Petition is neither prohibited nor should be limited by section 1506 of the Bankruptcy Code.

## NOTICE AND HEARING

52.     In accordance with section 1517(c) of the Bankruptcy Code, the Petitioner requests a hearing to consider the Chapter 15 Petition (the "Recognition Hearing") be scheduled at the "earliest possible time."[16]  Notice of the Recognition Hearing is governed by Bankruptcy Rule 2002(q)(1), which provides, in pertinent part, that:

> The clerk, or some other person as the court may direct, shall forthwith give the debtor, all persons or bodies authorized to administer foreign proceedings of the debtor, all entities against whom provisional relief is being sought under § 1519 of the Code, all parties to litigation pending in the United States in which the debtor is a party at the time of the filing of the petition, and such other entities as the court may direct, at least 21 days' notice by mail of the hearing on the petition for recognition of a foreign proceeding.

Fed. R. Bankr. P. 2002(q)(1).

53.     To the best of his knowledge and belief, the Petitioner (a) is not aware of the existence of any foreign proceedings of the Debtor other than the Brazilian Proceeding, nor any person or body other than himself authorized to administer the Brazilian Proceeding, (b) does not intend at this time to seek any provisional relief pursuant to section 1519 of the Bankruptcy Code, and (c) is not aware of any litigation pending in the United States in which the Debtor is a party as of the date hereof.  (Frgn. Rep. Decl. ¶ 34)  Accordingly, subject to any notice parties the Court may direct, the Petitioner submits that no further notice of the Chapter 15 Petition and Recognition Hearing is required.

---

[16]     Although the Petitioner does not anticipate any objections to recognition of the Brazilian Proceeding, applicable rules provide parties in interest 21 days from the service of summons regarding a chapter 15 petition to object thereto and require that any objection challenging a foreign representative's designation of COMI of the foreign proceeding be filed no later than seven (7) days prior to the hearing on recognition.  See Fed. R. Bankr. P. 1011(b) and 1004.2, respectively.

## NO PRIOR REQUEST

54.    No previous request for the relief requested herein has been made to this or any other court.

## CONCLUSION

**WHEREFORE**, the Petitioner respectfully requests that the Court: (a) enter the Proposed Order, upon notice and a hearing, substantially in the form attached hereto as **Exhibit A**, and (b) grant such other and further relief as may be just and proper.


Dated:  July 2, 2015
Miami, Florida

Respectfully submitted,

**KOBRE & KIM LLP**

s/ John D. Couriel
John D. Couriel
Michael S. Kim (*pro hac vice* pending)
Jeremy Hollembeak (*pro hac vice* pending)
2 South Biscayne Boulevard,
Miami, FL  33131
Tel: +1 305 967 6100
Fax: +1 305 967 6120