## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| In re: | Chapter 15 |
| VIAÇÃO ÁREA SÃO PAULO S.A., | Case No.: _____ |
| Debtor in a Foreign Proceeding | |

**DECLARATION OF ALEXANDRE TAJRA AS FOREIGN REPRESENTATIVE
(I) IN SUPPORT OF PETITION FOR RECOGNITION OF DEBTOR'S BRAZILIAN
PROCEEDING AND MOTION FOR ORDER GRANTING RELATED RELIEF AND
(II) IN COMPLIANCE WITH 11 U.S.C. § 1515 AND FED. R. BANKR. P. 1007(a)(4)**

I, Alexandre Tajra, declare under penalty of perjury under the laws of the United States of America that the following is true and correct:

1.      I am the court-appointed Judicial Administrator and duly-authorized foreign representative of the Brazilian proceeding (the "Brazilian Proceeding") of the above-captioned debtor, Viação Área São Paulo S.A. (the "Debtor" or "VASP") pending before Judge Daniel Carnio Costa of the First Bankruptcy and Court-Supervised Reorganization Court of the Central Civil Court of the Judicial District of São Paulo (the "Brazilian Bankruptcy Court") pursuant to Federal Law No. 11.101 of February 9, 2005 ("Brazilian Bankruptcy Law") under the laws of the Federative Republic of Brazil ("Brazil").  I am a Brazilian attorney, licensed to practice and registered before Brazilian BAR (OAB/SP) No. 77.624, working mainly with Reorganization and Bankruptcy judicial procedures.  I maintain a solo practice, located at *Praça da Sé, 21, São Paulo/SP*, Brazil.  As more fully described below, I have been appointed by the Brazilian Bankruptcy Court to act as foreign representative of the Brazilian Proceeding, I am authorized to commence this chapter 15 case and, in such capacity, hereby submit this declaration in support thereof (the "Declaration").

1

2.      In compliance with section 1515 Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "<u>Bankruptcy Code</u>") and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and after consultation with my U.S. counsel, Kobre & Kim LLP ("<u>Kobre & Kim</u>"), I hereby respectfully submit this Declaration in support of the form and written memorandum chapter 15 petition (together, the "<u>Chapter 15 Petition</u>") filed at my direction contemporaneously herewith requesting entry of an order, substantially in the form attached thereto as Exhibit A (the "<u>Proposed Order</u>"), recognizing the Brazilian Proceeding as a "foreign main proceeding" pursuant to section 1517 of and granting certain related relief pursuant to sections 105(a), 1509(b), 1520, 1521 and 1525 of the Bankruptcy Code.

3.      This Declaration sets forth a description of VASP's former business operations and reported indebtedness, the circumstances leading to the commencement of the Brazilian Proceeding, the relevant material developments in the Brazilian Proceeding leading to the commencement of this chapter 15 case, and the factual bases for the relief requested in the Chapter 15 Petition.  Unless otherwise noted, I have personal knowledge of the facts set forth in this Declaration as a result of my acting as Judicial Administrator for the Brazilian Proceeding since its commencement in 2005.  Although Portuguese is my native language, I am fluent in English and have elected to execute this Declaration in the English language.

## FACTUAL BACKGROUND

### A.      Corporate History Of Debtor

4.      VASP began operating as a commercial airline in 1933 with its headquarters in São Paulo, Brazil.  Shortly after its founding, in 1935, financial distress prompted government intervention, and ownership of 91.6% of VASP's common shares was transferred to the Government of the State of São Paulo.

5.      VASP remained a government-owned enterprise until 1990, when its ownership was purchased from the State of São Paulo by Brazilian businessman Wagner Canhedo Azevedo ("Mr. Canhedo").

**B.      Events Precipitating Commencement Of Brazilian Proceeding**

6.      Following its acquisition by Mr. Canhedo, VASP began a period of expansion in an effort to transition from a regional to an international carrier.  At its peak, VASP offered commercial flights from Brazil to many international destinations including Miami; New York; Seoul, Korea and Brussels, Belgium.

7.      By the turn of the century, however, VASP's fortunes had taken a turn for the worse.  Among other reasons, the decline was precipitated by the devaluation of the Brazilian Real in 1999.  Left with only its owned aircraft – by that time, an aged fleet of Boeing 727s/737s and Airbus A300s – VASP cancelled all of its international operations by 2002 and collapsed back into a regional carrier within South America.

8.      In the first half of 2005, VASP publicly disclosed its poor financial condition, reporting cumulative losses of R$520 million during 2004. According to VASP's accounting records, the company had aggregate liabilities of R$3.287 billion as of December 2004.

9.      On March 10, 2004, due to unpaid labor obligations, a lawsuit was filed before the labor courts by the Public Attorney's Office for the State of São Paulo and by two labor unions, *Sindicato Nacional dos Aeroviários* and *Sindicato Nacional dos Aeronautas.* The Fourteenth Labor Court of São Paulo ordered an intervention on VASP, and Mr. Canhedo lost control over the administration of the company.

10.      On July 1, 2005, the interveners appointed by the Labor Court, with the consent of the Public Attorney's Office, caused VASP to file a petition for a judicial reorganization under

3

the then newly-enacted Brazilian Bankruptcy Law.  After the petition had been granted, a report issued in December 2005 in support of VASP's then-proposed plan of reorganization listed VASP's total assets as of June 2005 at R$2,963,097 million inclusive of (i) R$97 million in current assets, (ii) R$1,410 million in planes,[1] (iii) R$826 million in tax credits, and (iv) R$726 million in accounts receivable.

**C.    Commencement of Brazilian Proceeding and Failure Of Reorganization Plan**

11.    By order dated October 7, 2005 (the "Commencement Order"), the Brazilian Bankruptcy Court granted VASP's petition commencing the Brazilian Proceeding as a "judicial reorganization" under Brazilian Bankruptcy Law and appointing me as Judicial Administrator thereof.

12.    The goal of a "judicial reorganization" in Brazil is to reach a judicially-supervised plan of reorganization between the debtor and its creditors.  Brazilian Bankruptcy Law requires that such plan contain:  (i) a thorough description of the measures to be taken to successfully reorganize the company; (ii) a demonstration of the economic feasibility of the plan of reorganization; and (iii) a financial expert's assessment of debtor's goods and assets.  In addition, the plan of reorganization must provide for the payment of the affected claims.  After a plan is proposed by a debtor, its creditors meet to deliberate and vote on the plan.  A plan supported by the requisite majorities of various creditor classes must then be approved by the Brazilian bankruptcy court.  Once a plan is confirmed, the debtor continues under the supervision of the court for two years before it can emerge from judicial reorganization to ensure its initial performance under the plan.  If at any time during that two year period the debtor breaches any

---

[1]    As of June 30, 2005, VASP had 31 airplanes, consisting of nineteen Boeing 737-200s; four Boeing 737-300s; three Airbus A300s; two Boeing 737-200 Cargo aircraft; and three Boeing 727-200 Cargo aircraft.  Thirty of these airplanes were owned by VASP itself, while one was subject to a lease contract.

obligations assumed under the plan, the debtor must be declared bankrupt by the court and placed into liquidation.  Alternatively, if the debtor successfully emerges from judicial reorganization but thereafter fails to perform any obligation under the plan, any creditor may petition the court for specific performance or to have the debtor declared bankrupt and placed into liquidation.

13.     In accordance with Brazilian Bankruptcy Law, after the Brazilian Proceeding had been commenced, VASP presented a plan of reorganization (the "Brazilian Plan") which it believed, with the support of its creditors, would allow it to continue operating the airline while reducing its debt to a manageable level.  To that end, the Brazilian Plan offered VASP's creditors one of two options:  (i) exchange their outstanding debts for a share of ownership in specials funds into which VASP would transfer certain assets as well as R$826 million of tax credits that were on the company's balance sheet, or (ii) agree to discount the face amount and extend the maturity of their claims, which would become the obligations of a "low cost" airline to be created by VASP, which was called the "Operational VASP."  Operational VASP would operate initially with only six (6) planes, thus reducing the size of VASP, and would also provide airline maintenance and cargo services.

14.     On August 24, 2006, having obtained the requisite creditor support, the Brazilian Plan was approved by the Brazilian Bankruptcy Court.  In the ensuing two year period, however, VASP failed to comply with certain of its obligations under the plan. As a result of these developments, a meeting of creditors was called and held on July 17, 2008,  the majority of VASP's creditors voted to petition the Court to convert the judicial reorganization into a full bankruptcy proceeding.

15.     On September 4, 2008, the Brazilian Bankruptcy Court entered an order declaring VASP bankrupt and converting the judicial reorganization into a liquidation.  At this point, continuing operations of VASP's business – which were limited, if any – permanently ceased.

**D.     Current Status Of Brazilian Proceeding**

16.     Upon the Brazilian Proceeding being converted to a liquidation, I, in my capacity as Judicial Administrator, became obligated under the Brazilian Bankruptcy Law to collect and liquidate the Debtor's assets under the supervision of the Brazilian Bankruptcy Court in order to make distributions to creditors on account of their allowed claims.  As of August 27, 2010, the outstanding amount of allowed claims against the Debtor's estate was R$5,069,936,783.21 (US$2,250,037,944) – making the Brazilian Proceeding one of the largest bankruptcy matters in modern Brazilian financial history.  By contrast, the readily identifiable assets remaining in the Debtor's possession following conversion of the Brazilian Proceeding were relatively minimal.  For example, I have identified and am working to liquidate approximately R$100 million of commercial buildings in Brazil belonging to the estate.  Furthermore, the Debtor had less than R$50 million in cash on hand upon conversion, and since conversion a substantial portion of such cash has been used to pay (or is being reserved to pay in the future) the claims of post-petition creditors and administrative expenses of the Debtor's estate.

17.     As a result, the prospect of any substantial recovery becoming available to the Debtor's creditors is largely dependent upon my finding and retrieving valuable assets that had been transferred away from the Debtor prior to the commencement of the Brazilian Proceeding or its conversion from a judicial reorganization to a liquidation.  To this end, for the benefit of the bankruptcy creditors, the Public Attorney's Office for the State of São Paulo has successfully petitioned the Brazilian Bankruptcy Court to freeze the assets of certain third parties pending a

6

determination of whether they belong to or otherwise can be recovered by the Debtor's estate. Following such determination by the Brazilian Bankruptcy Court, and subject to the Brazilian Proceeding being granted chapter 15 recognition, I anticipate requesting this Court to enforce in the United States any relief that has been or may be granted in Brazil authorizing me to recover assets from third parties for the benefit of VASP's estate.

18.     In furtherance of these efforts and investigations, I requested authority from the Brazilian Bankruptcy Court to commence a chapter 15 case seeking recognition of the Brazilian Proceeding and the assistance of courts in the United States in fulfilling my duties to collect and liquidate the Debtor's assets.  By order dated March 27, 2014 (the "Chapter 15 Authorization Order"), the Brazilian Bankruptcy Court explicitly authorized me to commence an ancillary case in this District seeking chapter 15 recognition of the Brazilian Proceeding.

## FILING OF CHAPTER 15 PETITION AND BASES FOR RECOGNITION OF BRAZILIAN PROCEEDING AND RELIEF REQUESTED

19.     On the date hereof, this case was commenced by Kobre & Kim, at my direction, filing the Chapter 15 Petition with this Court.  For the reasons set forth below, I believe that (i) the Brazilian Proceeding should be recognized by this Court as a foreign main proceeding (ii) I, in my capacity as foreign representative of the Brazilian Proceeding, and the Debtor, as applicable, are entitled to the rights and protections incident to such recognition as well as to the additional relief requested in the Chapter 15 Petition pursuant to chapter 15 of the Bankruptcy Code.

**A.     The Debtor's Only Known Assets in the United States are Located in this District**

20.     I have been informed by Kobre & Kim that VASP – as the entity subject to the Brazilian Proceeding – is eligible to be a chapter 15 "debtor" as that term is defined in section 1502(1) of the Bankruptcy Code.  I have also been informed by Kobre & Kim that certain courts

in other U.S. districts have also required chapter 15 debtors to comply with the eligibility requirements set forth in section 109(a) of the Bankruptcy Code, namely that a debtor have assets or business operations in the United States to be a debtor.

21.    I believe this requirement, to the extent applicable,[2] is satisfied.  Specifically, I have deposited funds belonging to the Debtor in an escrow account maintained by Kobre & Kim LLP at Citibank, N.A. in Miami, Florida (the "Escrow Account").  The Debtor retains full ownership of the funds in the Escrow Account unless and until they are released at my direction. Additionally, I anticipate that through recognition of the Brazilian Proceeding and the exercise of discovery powers requested in the Chapter 15 Petition, I will be able to identify additional assets and/or causes of action belonging to the Debtor located in the territorial jurisdiction of the United States.

22.    Furthermore, I have been advised by Kobre & Kim that the proper venue for chapter 15 cases is determined by section 1410 of Title 28 of the United States Code, which provides that a chapter 15 case should be commenced in the district court of the United States for the district (1) in which the debtor has its principal place of business or principal assets in the United States, (2) if the debtor does not have a place of business or assets in the United States, in which there is pending against the debtor an action or proceeding in a United States Federal or State court, or (3) if neither (1) or (2) apply, in which venue will be consistent with the interests of justice and the convenience of the parties.

23.    I believe venue of this case is proper in this District pursuant to both the first and third of these grounds.  As described above, the Debtor has no place of business in the United States, having ceased all flights into the United States on or prior to 2002, and substantially all of

---

[2]    On the advice of Kobre & Kim, I do not concede that section 109(a) applies to this case and reserve all of my rights to argue otherwise.

its business operations worldwide on or before the conversion of the Brazilian proceeding from reorganization to a liquidation in 2008.  Thus, to the best of my information and belief, as of the date hereof, the Debtor has no employees or operations in the United States; nor is the Debtor party to any lawsuits in the United States.  The Debtor's sole known property of value in the United States, and therefore its principal assets, are the funds held in the Escrow Account located in in this District.[3]  Moreover, in my experience and opinion, Miami is a financial and legal center within the United States for both Brazilian companies with international operations and wealthy Brazilian individuals.  For that reason, I was not surprised when informed by Kobre & Kim that the majority of all chapter 15 cases seeking recognition of Brazilian proceedings have been commenced in this District.  For these reasons, I believe that the interests of justice are served by establishing venue in this District.

**B.**     **The Brazilian Proceeding Is a Foreign Main Proceeding**

24.     I have been advised by Kobre & Kim that the Bankruptcy Code defines (i) a "foreign proceeding" as a collective judicial or administrative proceeding relating to insolvency or adjustment of debt, pending in a foreign country, under the supervision of a foreign court and for the purpose of reorganizing or liquidating the assets and affairs of the debtor, and (ii) a "foreign court" as a judicial authority competent to control or supervise a foreign proceeding.

25.     I believe the Brazilian Proceeding fits squarely within the Bankruptcy Code's definition of a "foreign proceeding."  Insolvency proceedings in Brazil are governed by the Brazilian Bankruptcy Law, which came into effect on June 9, 2005.  The Brazilian Bankruptcy Law provides for bankruptcy liquidation proceedings as well as two forms of reorganization:

---

[3]     My investigation to date of the Debtor's assets has revealed possible VASP bank accounts within the United States.  As of the date hereof, however, I have not been able to determine the location of such accounts or the amount of funds remaining therein, if any.

(1) a court-supervised reorganization proceeding known as *recuperacao judicial* ("judicial reorganization"), and (2) an expedited reorganization proceeding known as *recuperacao extrajudicial* ("extra-judicial reorganization"). As a general rule, once a judicial reorganization has commenced, the debtor retains the right to administer its assets and affairs and may continue to run its business. A judicial administrator (*administrador judicial*) is appointed by the court and is responsible for, among other things, overseeing the debtor's management of its day-to-day affairs and managing the claims verification process and informing the court when the debtor fails to meet its obligations under the plan or otherwise commits malfeasance. Moreover, once a judicial reorganization has commenced, the reorganization proceeding may be converted into a liquidation proceeding at any time. Once a proceeding is converted to a liquidation, Brazilian Bankruptcy Law provides that officers and directors of the debtor company are no longer allowed to manage its affairs and the assets of the debtor are collected and sold by the judicial administrator under the continued supervision of the Brazilian Bankruptcy Court.

26. As noted above, the Brazilian Bankruptcy Court entered the Commencement Order commencing the Brazilian Proceeding as a judicial reorganization under Brazilian Bankruptcy Law and appointing me as Judicial Administrator thereof on October 6, 2005. As also noted above, following the Debtor's failure to fulfill certain obligations under the Brazilian Plan, the Debtor's creditors voted to convert the Brazilian Proceeding from a judicial reorganization to a liquidation pursuant to Brazilian Bankruptcy Law on July 17, 2008. Following this conversion, I have remained the Judicial Administrator of the Brazilian Proceeding and continued to fulfill my obligations to collect and liquidate the Debtor's assets under Brazilian Bankruptcy Law and the judicial supervision of the Brazilian Bankruptcy Court.

27.     I have also been advised by Kobre & Kim that, in order to be entitled to recognition as a "foreign main proceeding" under chapter 15 of the Bankruptcy Code, it must be shown that the foreign proceeding is pending in the jurisdiction where the debtor has its center of main interests ("COMI").

28.     I believe the Brazilian Proceeding qualifies as a "foreign main proceeding" because the Debtor's COMI is in Brazil. At all times since it began operations in 1933, VASP has been incorporated and headquartered in São Paulo, Brazil. Indeed, VASP – whose full name, Viação Área São Paulo S.A. roughly translates to the Commercial Airline of São Paulo in English – was owned by the Government of the State of São Paulo from 1935 until its purchase in 1990 by Mr. Canhedo. For the majority of its history, VASP was one of the largest and most recognizable Brazilian airlines. Similarly, Mr. Canhedo is widely seen throughout Latin America as one of Brazil's most recognizable and wealthy businessmen. To this day, he and/or members of his family own and operate a number of well-known Brazilian businesses, including bus transportation operation, various farms or cattle ranches, and hotel properties all located in Brazil.

29.     Moreover, VASP's Brazilian Proceeding has been pending before the Brazilian Bankruptcy Court for over nine years now. During the first years of the Brazilian Proceeding, VASP continued to operate out of São Paulo while it sought approval of and then attempted to implement the Brazilian Plan. In 2008, when implementation of that plan failed, VASP's creditors overwhelmingly voted to convert the Brazilian Proceeding to a liquidation. Since then, I have spent over six years collecting and liquidating VASP's assets, which to date have largely been Brazilian assets, under the continuing supervision of the Brazilian Bankruptcy Court. I am not aware of the existence of any insolvency proceeding concerning VASP other than the

11

Brazilian Proceeding, nor am I aware of any suggestion having been made at any time during its pendency by a creditor or party in interest that VASP's center of main interest is anywhere other than Brazil.

**C.    I am a Proper "Foreign Representative" of the Brazilian Proceeding**

30.    I am informed by Kobre & Kim that a chapter 15 petition must be filed by a "foreign representative" which the Bankruptcy Code defines as a person or body authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

31.    I believe I am a proper "foreign representative" for the following reasons.  I am an individual who has been duly appointed by the Brazilian Bankruptcy Court to act as the Judicial Administrator of the Brazilian Proceeding.[4]  In such capacity, while the Brazilian Proceeding was in judicial reorganization, I, among other things, oversaw the Debtor's management of its day-to-day affairs and managed the claims verification process.  Once the Brazilian Proceeding was converted to a liquidation, my roll expanded to include the collection and liquidation of the Debtor's assets under the continued supervision of the Brazilian Bankruptcy Court.  Moreover, by the Chapter 15 Authorization Order, the Brazilian Bankruptcy Court explicitly authorized me to commence an ancillary case in the District seeking chapter 15 recognition of the Brazilian Proceeding.

---

[4]    As set forth below, a copy of the original Commencement Order (in Portuguese) as well as a certified English translation thereof are attached as exhibits hereto.

D.     **This Declaration Contains the Disclosures Required for Granting Recognition of the Brazilian Proceeding**

1.     **Copy of Decision Commencing Brazilian Proceeding and Appointing Me As Its Foreign Representative**

32.     I am informed by Kobre & Kim that section 1515(b) of the Bankruptcy Code requires that a petition for recognition of a foreign proceeding be accompanied by a certified copy of the decision commencing such proceeding and appointing the foreign representative (and an English translation thereof).  As noted above, by the Commencement Order, the Brazilian Bankruptcy Court granted VASP's petition commencing the Brazilian Proceeding as a "judicial reorganization" under Brazilian Bankruptcy Law and appointing me as Judicial Administrator thereof.  A copy of the original Commencement Order (in Portuguese) as well as a certified English translation thereof are attached hereto as **Exhibit A** and **Exhibit B**, respectively.  In addition, a copy of the notice issued by the Brazilian Bankruptcy Court on October 10, 2005 confirming that I had accepted the appointment as Judicial Administrator (in Portuguese) as well as a certified English translation thereof are attached hereto as **Exhibit C** and **Exhibit D**, respectively.  As also noted above, by the Chapter 15 Authorization Order, the Brazilian Bankruptcy Court explicitly authorized me to commence an ancillary case in this District seeking chapter 15 recognition of the Brazilian Proceeding.  A copy of the original Chapter 15 Authorization Order (in Portuguese) as well as a certified English translation thereof are attached hereto as **Exhibit E** and **Exhibit F**, respectively.

2.     **Statement of all Known Foreign Proceedings with respect to the Debtor**

33.     I am informed by Kobre & Kim that section 1515(c) of the Bankruptcy Code requires that a petition for recognition of a foreign proceeding contain a statement identifying all foreign proceedings with respect to the debtor that are known to the foreign representative.  I

hereby state that, to the best of my knowledge and belief, the Brazilian Proceeding as the only foreign proceeding currently pending with respect to the Debtor.

### 3. Further Disclosures Required by Bankruptcy Rule 1007(a)(4)

34.    I am informed by Kobre & Kim that Bankruptcy Rule 1007(a)(4) requires that a petition for recognition of a foreign proceeding be accompanied by (i) a corporate ownership statement containing the information described in Bankruptcy Rule 7007.1 and (ii) a list containing the names and addresses of all persons or bodies authorized to administer foreign proceedings of the debtor, all parties to litigation pending in the United States in which the debtor is a party at the time of the filing of the petition, and all entities against whom provisional relief is being sought under section 1519 of the Bankruptcy Code.   A corporate ownership statement containing the information described in Bankruptcy Rule 7007.1 is attached hereto as **Exhibit G**.  As noted above, I am not aware of any foreign proceedings of the debtor other than the Brazilian Proceeding, and I am the only person authorized to administer the Brazilian Proceeding.  My address is *Praça da Sé, 21, São Paulo/SP*, Brazil.  As also noted above, I am not aware of any litigation pending in the United States in which the debtor is a party as of the date hereof.  Finally, although I reserve the right to do so, at this time I am not seeking any provisional relief under section 1519 of the Bankruptcy Code.

### E. Facts and Circumstances Warranting Discretionary Relief under Chapter 15 of Bankruptcy Code

35.    After consultation with Kobre & Kim, in addition to the relief that will arise automatically upon recognition of the Brazilian Proceeding as a foreign main proceeding, I have decided to request certain additional discretionary relief available under chapter 15 of the Bankruptcy Code.  For the following reasons, I believe such relief is warranted and appropriate under the circumstances.

14

### 1.        Relief Protecting the Debtor and its Assets

36.      By the Chapter 15 Petition, to ensure that the Debtor and its assets are fully protected, I have requested that the Court enter a stay against any parties that may attempt to commence prepetition or post-petition actions and/or claims in the United States against the Debtor or its property, or otherwise attempt to transfer, encumber or dispose of such property pursuant to sections 1521(a)(1), (2), and (3) of the Bankruptcy Code.  I fear that certain creditors may take actions in the United States against the Debtor or its property – especially property which I have yet to identify as belonging to the Debtor and/or recoverable for distribution to the Debtor's creditors – seeking to obtain more than the distribution they are entitled under the Brazilian Bankruptcy Law.  If such creditors can effectively evade the Brazilian Proceeding by commencing actions in the United States, I, on behalf of the Debtor's estate, would be left to defend against these suits, regardless of their merit.  This could irreparably deplete the resources available to me to collect and administer the Debtor's assets and the resulting distributions to creditors in the Brazilian Proceeding.  For these among other reasons,[5] I submit that (i)  I will be successful on the merits of my request for recognition of the Brazilian Proceeding as a foreign proceeding and, in any event, such recognition will occur simultaneously with or prior to the granting of this additional relief, (ii) irreparable harm will result in the absence of such relief, (iii) such relief would not cause undue hardship or prejudice to the rights of any U.S. based creditors, and (iv) public policy supports such relief.  Accordingly, I believe granting this additional relief will protect the interests of all of the Debtor's creditors in having claims against the Debtor and its estate valued and paid on a consistent, non-discriminatory basis as determined by the Brazilian Bankruptcy Court.

---

[5]      I reserve the right to set forth more fully the bases for this relief at the request of the Court or in the event such relief is objected to by a party in interest.

15

### 2.    Relief Authorizing Discovery

37.    By the Chapter 15 Petition, I also have requested authorization from the Court to examine witnesses and take evidence and information concerning the Debtor's assets, affairs, rights, obligations or liabilities pursuant to section 1521(a)(4) of the Bankruptcy Code.  I have reason to believe that a substantial amount of property belonging to the Debtor was improperly transferred away in the lead-up to, and in some cases after, the commencement of the Brazilian Proceeding.  In accordance with my duties as Judicial Administrator, I am investigating these transfers in an attempt to find additional assets that should be collected and distributed to the Debtor's creditors in the Brazilian Proceeding.  That investigation has expanded beyond the borders of Brazil and led me to believe that such assets exist within the United States, among other countries.  In fact, obtaining the discovery powers set forth in section 1521(a)(4) is central to the purpose for which the Brazilian Bankruptcy Court directed me to commence a chapter 15 case.  As noted above, the Debtor is not currently party to any U.S. litigation and, therefore, without authorization from this Court, upon recognition, I will not have immediate means to otherwise obtain discovery or compel disclosures from third parties.  Accordingly, I believe the requested discovery powers are essential to my ability to fulfill my duties under the Brazilian Bankruptcy Code and my mandate from the Brazilian Bankruptcy Court.

### 3.    Relief Entrusting Administration, Realization, and Distribution of Debtor's Assets

38.    By the Chapter 15 Petition, I also have requested that the Court entrust me with the administration, realization, and distribution of all of the Debtor's assets within the territorial jurisdiction of the United States pursuant to sections 1521(a)(5) and 1521(b) of the Bankruptcy Code.  Similar to what I understand from discussions with Kobre & Kim to be the duties of a chapter 7 trustee pursuant to section 704 of the Bankruptcy Code, I (in my capacity as Judicial

Administrator of the Brazilian Proceeding) am charged with liquidating the Debtor's assets and distributing the proceeds thereof in accordance with Brazilian Bankruptcy Law and under the supervision of the Brazilian Bankruptcy Court.  Indeed, I consider fulfilling these duties with respect to assets identified and collected in the territorial United States to be germane to my appointment as Judicial Administrator and Foreign Representative of the Brazilian Proceeding.  Among other benefits, such relief would avoid the administrative cost and delay attendant to requesting similar relief in a piece-meal fashion for every asset subject to the Brazilian Proceeding that I identify as being located within the United States.  Of course, I will comply with any notice or reporting requirements that the Court may deem necessary or appropriate.

**4.      Relief Will Sufficiently Protect the Interests of Creditors**

39.      I am informed by Kobre & Kim that, before granting additional relief pursuant to section 1521 of the Bankruptcy Code, the Court must be satisfied that the interests of creditors and other interested entities, including the debtor, are sufficiently protected.  I believe the additional relief requested in the Chapter 15 Petition satisfies this requirement because, among other reasons, the Debtor's creditors are "sufficiently protected" by the treatment afforded to them in the Brazilian Proceeding under Brazilian Bankruptcy Law.  In particular, U.S. claimants (if any) are not being subjected to undue inconvenience or prejudice because, for example, Brazilian Bankruptcy Law does not create any additional burdens for foreign creditors to file a claim and confers upon them the same status and rights as creditors in Brazil.  Moreover, substantially in accordance with what I understand, through discussions with Kobre & Kim, to be the distribution scheme under the chapter 7 of the Bankruptcy Code, the distribution scheme in liquidation prescribed under Brazilian Bankruptcy Law grants priority to certain administrative claims and grants secured claims priority over unsecured claims.  Accordingly, the ultimate

17

distributions creditors will receive on account of their claims in the Brazilian Proceeding will be materially consistent with those they would have received under U.S. law.

**5.      Relief Is Consistent with the Purposes of Chapter 15 and the Court's Mandate to Cooperate to the Maximum Extent Possible**

40.      I am informed by Kobre & Kim that discretionary relief under chapter 15 of the Bankruptcy Code should be consistent with the statutory purposes of chapter 15 and further international cooperation between U.S. and foreign courts.  I believe granting the relief requested by the Chapter 15 Petition is consistent with these goals.   By recognizing the Brazilian Proceeding as a "foreign main proceeding" and enjoining creditors from commencing or continuing actions against the Debtor or its assets in the United States, the Court would be fostering cooperation between courts in Brazil and the United States and ensuring that the fair and efficient administration of the Debtor's assets in the Brazilian Proceeding cannot be disrupted by creditors or other parties in interest outside of Brazil.  Moreover, by empowering me to employ the means of investigation and discovery available under United States law and procedure, this Court would be protecting and maximizing the value of U.S. assets belonging to or absconded from the Debtor and promoting legal certainty by ensuring those assets are collected and administered by me in accordance with Brazilian Bankruptcy Law.

**F.      Brazilian Proceeding and Brazilian Bankruptcy Law Provide Creditors and Other Parties in Interest with Due Process**

41.      I am informed by Kobre & Kim that the Court may deny any of the relief requested by the Chapter 15 Petition if it determines that granting such relief would be manifestly contrary to the public policy of the United States.  I am also informed by Kobre & Kim that this analysis, in part, turns on whether creditors and other parties in interest are provided rights in the foreign proceeding that comport with notions of due process under United States law.  To assist in this analysis, I wish to inform the Court that pursuant to Brazilian

18

Bankruptcy Law, the Brazilian Proceeding has provided (and continues to provide) creditors and other parties in interest with the notice and opportunities to participate and be heard that are consistent with concepts of due process under United States law and jurisprudence as I understand them. Moreover, since its conversion to a liquidation, the Brazilian Proceeding has played out in a manner substantially similar to what I understand takes place in a chapter 7 case under the Bankruptcy Code, with a centralized process to assert and resolve claims against the estate and a court-appointed and supervised trustee (i.e., me) responsible for collecting and liquidating the Debtor's assets and making distributions to creditors. In sum, the relief I have requested by the Chapter 15 Petition would effectively extend this liquidation process into the United States, ensuring that assets belonging to or absconded from the Debtor located within the territorial U.S. do not escape the reach of the Brazilian Proceeding and empowering me to employ the means of investigation and discovery that are afforded as of right to trustees in plenary U.S. bankruptcy cases. Based on my discussions with Kobre & Kim, I do not believe that such relief is contrary to United States law or public policy.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK.]

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: June 29, 2015
São Paulo, Brazil

/s/
Alexandre Tajra

Judicial Administrator and Foreign
Representative of Brazilian Proceeding

20